Good morning, Your Honors. I'm Jim Bea. I represent the plaintiff appellant, La Paloma. And if you've kept really up with the docket, the about-to-be-substitute plaintiff called C.S.A. Only if we say so. Only if you say so. But the good news is that my colleagues have indicated they have no objection. They could have closed this thing a little bit in advance and made my life easy, not to mention my associates. But they closed it yesterday, so the motion was made last night. Either way, I got La Paloma. And either way, La Paloma had a cause of action here that should not have been dismissed on a 12B6 motion. Roberts. Isn't your essential argument in this case that your client can step into the shoes of EDF, to use the shorthand for it? Well, I think I'd like to vary the analogy slightly and say that on the one hand, my client's argument is that EDF was wearing its shoes. That is to say it was the agent and that what Section 3.2 of the Energy Management Agreement says is you're going to do these things, scheduling, delivery, and those are exactly the things that agents do. But in the second argument, which is the third party beneficiaries like that. Before you get to that, because you're talking about the EMA, the Energy Management Agreement, says we're not creating an agency relationship except with a very limited area, which is the balancing agreements, and that requires the consent of the utility. So I'm having some difficulty with your agency argument, given the fact that your agreement with EDF says we're not creating an agency relationship. Of course, but the answer is look at what I do and not at what I say. Contracts disclaim agencies and therefore fiduciary duties all the time. But the courts below recognize when they actually hear these cases that just because you disclaimed it in lawyer's best boilerplate doesn't mean that what you actually were doing isn't the work of an agent. But if you were suing EDF, I'd understand that argument. I don't know why you aren't, but I suspect it's because there's a limitation of liability. That's certainly part of it. But with respect to the defendants in this case, if I call them collectively Mojave, with respect to Mojave, they're dealing with EDF, and there's an Energy Management Agreement that announces to the world that EDF is not your agent. So how are they supposed to – so how can you impose liability under the contract to them under an agency theory? Your Honor, as far as the record shows, and I think this is correct, the EMA doesn't announce anything to anyone in the world except the parties. What announces to Mojave what EDF is doing is what EDF does, and that is to place all these orders in an electronic marketplace in which La Paloma is defined as the party getting the gas. So there is – And I wanted to ask you about that because it really goes to your third-party beneficiary argument. There's some relationship, yes. As I read these agreements, what happens is – tell me if I'm wrong because I'm not a gas guy, at least not a natural gas guy. The EDF purchases gas, puts it in the pipeline. Somewhere. Somewhere. It gets delivered to various places, including to your client at InterConnex, correct? In this instance, more precisely, they purchase specific volumes and equivalent volumes, not just some gas but equivalent volumes. Right, because they have to balance the pipeline. They have to put the same amount in and it comes out. But their agreement with Mojave, if you will, is that you'll deliver gas when we purchase it to the location that we tell you to, right? Yes. Okay. So I'm thinking of – and tell me why my analogy is wrong. I call up Nike and I say I want to buy some sneakers. Nike has a contract with FedEx to deliver the sneakers. FedEx says I'm not going to deliver them. We're too busy. We're going to breach our contract with you, Nike. May I enforce Nike's contract against FedEx or do I simply have a cause of action against Nike? Your Honor, that requires us to look into the contract and see whether the contract has a third-party beneficiary. The way the contract works with FedEx is Nike says we will tell you to whom to deliver the sneakers. So they say here are the sneakers. Deliver them to Hurwitz. So we now know that Nike has a contract to deliver – or FedEx has a contract to deliver the sneakers to me. May I enforce that contract against FedEx or is it only Nike's contract to enforce? Your Honor, I think the – unfortunately, the answer is it depends. But, no, those are all the facts in the world. You can't say it depends. You can't make up more facts. Those are all the facts. May I enforce the contract against FedEx? It is your hypothetical, yes. I think that if all that happens is that there is one isolated order to deliver shoes somewhere to someone that Nike doesn't have any dealings with – I mean, sorry, that FedEx doesn't have any deliveries – dealings with, the answer might be no. Okay, so let me change the hypothetical now. Nike says to FedEx, we ship shoes to many people. And, by the way, I take it from the nominations that they know where this is going. That's not really disputed. We ship shoes to many people. We ship them to Macy's. We ship them to Nordstrom's. We ship them to 4,000 different stores. So we're going to – and you deliver them to Nordstrom's once every month. And they then – exactly the same scenario. May Nordstrom's enforce the contract to deliver at that point? It's getting close. And the reason why it's getting close – Do you really think that FedEx – remember, we're talking about imposing an obligation against the deliverer. Do you really think the deliverer agreed to take on responsibilities to the receiver? To get that package to the receiver? Yes, in a situation where, as here, the receiver's connection to this pipeline is set up by, in this case, Mojave or Kern, and where the gas that comes in – because this is not like a truck – the gas that comes in is actually unconnected to the gas put in the pipeline, except for equivalence of volume. Your Honor – But, of course, you really don't get – that's right. You don't get the gas that was put in the pipeline. You just get that volume. And I think that understanding how the labels here work when you're talking about a truck and don't work when you're talking about a pipeline is pretty important, because the reality here is that every nomination – and I know you have the blow-ups, and so you could actually read what they say, which I couldn't do – every nomination says, I'm doing a deal here not just to put it into the pipeline, but for someone to get it – to get gas out. So let me – I understand that. And here's the question about that. So EDF puts some gas in the pipeline because it wants to deliver it to La Paloma. The pipeline says, we have another customer for that gas today, so we're going to deliver that gas to somebody else. They've surely breached their contract with EDF. Can you sue them to make them deliver it to you? Your Honor, the thing is the facts don't happen that way with a pipeline, because in a pipeline what happens is I turn on the spigot. No, I understand. And gas comes out. I understand. I've made up a slightly different set of facts where you put in a certain – EDF puts in a certain volume of gas to be delivered to you so it will balance, and that day somebody else comes – instantaneously comes to the pipeline and says, we'll pay you twice as much for that gas as La Paloma was willing to – or as EDF was willing to, and they sell it to them. The question is, can you now force the pipeline to deliver to you that equivalent amount of gas? Because you're saying you're a third-party beneficiary. Let me just finish here. You're saying you're a third-party beneficiary, which means you have the ability to enforce EDF's contract with the pipeline. So that's why I'm asking the question. What's your answer? And I understand. And my answer is I have the ability to draw out that volume of gas. So you have – And what you're describing as a hypothetical is impossible under the tariff. You're not answering my question. I know you have the ability to draw it out. My question is, do you have the ability to enforce EDF's contract with Mojave? I don't need to as long as I draw out the gas, and the tariff stops what you just described. If you don't have that ability, then you're not a third-party beneficiary. That's why I'm asking the question. A third-party beneficiary must have the ability to enforce the contract against the promiser. Your Honor, if what you're saying, to try and put it in the gas situation, is that the pipeline, in effect, said, I'm going to turn off the interconnect today because I want that gas to flow somewhere else, I think the answer to that is yes, given the nature of the transaction, which is a combined – it isn't I sell you gas and ask you to do something else. It's I tell you to deliver gas to La Paloma, and here is how I offset the gas with a purchase. Under those circumstances, if they came in on March 1 and turned off our interconnect and said you cannot draw the volumes of gas which the nominations committed to you, I would say yes, that delivery contract is the contract we can enforce. Of course, they never did that, but that's the contract. You have to say that under your third-party beneficiary. I understand that, and I have no problem saying that once you get close to these facts. As I said, pipelines are different than delivery trucks. I think there are interesting hypotheticals about delivery trucks that just don't apply here because what you are creating when you make these contracts is precisely the right for someone to take gas out of the pipeline. It's the only purpose for the contract is to get the gas to the plant so it can run, and that's why this contact in the context of transactions made every day in nominations is a nomination contract that creates a third-party beneficiary. It is the case that the TSAs are also contracts, but they're not bilaterally complete until the nomination happens, and the nomination creates that three-way process of a third-party beneficiary. A procedural question. This was a motion to dismiss. Yes. Did the plaintiffs submit the nominations? We submitted it. We alleged in some detail the nomination process and submitted those lovely computer printouts that are the record of what was nominated, but we made complete allegations that they're in the complaint, that what was decided in the nominations was scheduling, delivery, quantities, specification of La Paloma, all of those things. If I might just go to one other going back to agency point before I reserve a few moments for rebuttal, one of the problems with the factual determinations that the court below made is that the court, with all respect, I think did not understand one of the documents, and that is the purchase-sale agreement. The court said, I'm afraid this is just a buyer-seller relationship, but what the buyer-seller document did, which helps prove this was an agency, is it said that when we buy gas and resell it to you, it is at the exact same price, and that's what makes this case totally different from the case that the court below cited, totally different from the cases cited by the defendants. When the person who is buying something for you either passes it through or has a fixed in advance margin and so cannot, in effect, trade with you, then that is indication that it's not buyer-seller but agency. That is what was going on here, and that's why both agency and third-party beneficiary work. And I think I'm going to have to save for the briefs why, if neither of them work, a state law duty of care still applies. I'd like to reserve the last minute and a half for rebuttal, if I might. Thank you. Thank you. Good morning, Your Honor. Charles Messer for the defendant, Applee Kern River Gas Transmission Company. The court correctly ruled that agency was not plausible on the facts before the court because La Paloma had renounced agency in the energy management agreement. And also, additionally in the record, there is the agency delegation agreement, which was signed by La Paloma and EDF Trading and Kern River, which expressly said at page 3 of 5 of the agreement that EDF Trading is not the agent of La Paloma for the purpose of requesting or making contracts. So the agency agreement was absolutely correct. This is a 12p6. It is, Your Honor. Is — are there facts at issue with respect to whether or not La Paloma is a third-party beneficiary of these contracts? There are not. Can you rule — can a court rule on that on the face of the contracts? Yes. Now, and the answer is can a third-party beneficiary be determined from the pleadings  And in this case, it certainly can, because — Well, here's my difficulty with that, and try to help me with it. The court says you're not a third-party beneficiary in effect because you're not named in the contract. Right. And they're not. And the nominations are really not part of the contract. Right. But it seems to me they are, because they want to deliver gas to somebody. It's not just a contract to deliver gas. It's a contract to deliver gas to some specified locations. And everybody knows that one of the locations is La Paloma. Sure. It's not. So why isn't — why aren't they effectively named in these contracts? A couple reasons. Number one, in the First Amendment complaint, I'm looking at excerpt of the record, page 61. This is the — La Paloma's precise description of what the nominations are. Quote, each nomination identified La Paloma as the party that would receive the gas, lists of the nominations during the relevant period as obtained from EDF, our exhibits K and L. And so these are lists of nominations. And the idea that there is somehow a separate transaction or separate contract on each day, as argued in the briefs, is not plausible. I mean, maybe — Well, if EDF were suing you and saying you didn't deliver the gas that I put in the you couldn't say, well, I didn't know where it was supposed to go, could you? That's correct. EDF has plausible potential claims against the pipeline defendants. So EDF had a contract with you to deliver gas to various places. Various places. But among them, La Paloma. Yes. That was one of 31, I think, designated delivery points. See, and that's why I'm having difficulty with the district court's notion that the nominations aren't part of the contract. Surely they're — surely they're information that's necessary for you to perform under the contract, isn't it? Sure. But the legal distinction is between incidental beneficiaries and intended specific beneficiaries. No. And I take that point. I guess I'm having difficulty. I don't get it. Sorry. Let me go ahead. I don't understand what you're saying. But it's not because they're not named, is my point. They're named. So I've now got to Judge Kaczynski's question. Sure. And to respond, I think, hopefully to Justice Kaczynski's question, incidental beneficiaries under Utah law, under Colorado law, are beneficiaries who are known. They're known. But the Supreme Court of Utah, for example, said that is not sufficient to create a third-party beneficiary. It's the SME case we cited in our brief. Just because you know the recipient — I have no idea what you just said. It was just totally flew by me. You just completely have no clue. I bet you I'm not alone in this courtroom. Try again. Sure. In order under Utah law for a party to be a third-party beneficiary of a contract, they must be specifically identified in the contract — Excuse me. Just so we're on the same track, you were going to explain the difference between Correct. And you said it's one, not the other. So just make sure that you're on that track. Explain it. Sure. Because I'm listening for why that distinction, why this makes them incidental rather than intended beneficiaries. Sure. It is only intended specific third-party beneficiaries who have the rights to enforce contracts signed by others. We got that. Incidental beneficiaries do not have the right. I know the difference. And so the distinction, so then how do you tell on the pleadings, right, which is La Paloma? Right. And the answer is when you look at Kern River's transportation service agreement with EDF, you say, okay, under Utah law, is La Paloma identified? And they're not. Well, but see, that's the problem that I have because — He still answered my question. Yes. They're not identified there, but they are identified at some point before the delivery is made. Sure. So where does it say that if you're not actually identified in the contract, you can't be an intended beneficiary? Why can't I have a contract that says I have customers, just like Judge Horowitz was before, and I can't tell you which pair of shoes will be delivered to which customer, but you have an obligation to deliver the shoes to the customers I designate for every transaction? Why then are not the customers, once I identify them, become — why do they not become intended third-party beneficiaries, even though we don't even know they exist at the time you and I entered into a contract? Because they are not within the scope of the original transportation service agreement. They're not within the scope of the original contract. See, that's where I'm having — But say you. Why is that the case? We contemplate they're going to go to customers. We don't know who the customers are. We will identify the customers later. Sure. And once we identify them, they surely become the intended beneficiaries because I sure don't want those shoes or gas or whatever it is to go to somebody else. You know, they're not just incidental. They are the very purpose because if they don't get it, I don't get paid. But that, Your Honor, respectfully, is contrary to the actual contract language. If you look at ER-177 or ER-181, the actual — Okay. Okay. Let's look at them. Don't fly them past me. I've got them here. Okay. I'm at 177. What are you now looking at? So this is one of the transportation service agreements. I don't remember whether it's Kearns or El Paso. I'll just get the ERs and look at it. And you'll see that the language is that the transporter is obligated to receive gas from the shipper, who is EDF trading, and is obligated to deliver gas to EDF trading. And so — Where is this? Tell me what section of the agreement it's in. They're all the same. You're looking at 1.1, right? 177. Yes. There are a bunch of paragraphs or numbers on the left-hand side. Right. Why don't you start with the number? It's section 5, receipt points, delivery points, and flow points. Got it. I'm looking at it right now. So shipper agrees to tender gas for transportation service, and transporter agrees to accept receipt quantities at the primary receipt points. And then transporter agrees to provide transportation service and deliver gas to shipper for a shipper's account. So what you're saying is your agreement is to deliver it to EDF at those points. Yes. And that EDF then can deliver it to the client. And I understand that argument. And it may well be that that's a reason that they're not an intended third-party beneficiary. But that's not what the district court said. The district court said they're not an intended third-party beneficiary because they're not identified. And I, like Judge Kaczynski, I have some difficulty with that conclusion because the delivery points are noted. You know where the delivery points are. You built the pipeline and interconnect. So the absence of identification to me doesn't win the day on intended third-party beneficiary. If your argument is instead we structured this contract to deliver it to EDF. And they were going to be responsible. That's a different argument than the one you were making to Judge Kaczynski. Well, that's my argument, Your Honor. But I need to yield the rest of my time to my colleague, Mr. McLaughlin. Well, I'm sorry. Before you go, so were you just blowing smoke at me? No. No, sir. Absolutely not. Our position is consistent. Are you going with the Hurwitz argument or are you going to the argument you were making to me? I, you know, you understand the difference. I mean, you know, when you finally got down to reading it, what you said is, look, they are set to send it to Shipper, right? Right. So this is not an argument that says, oh, they are not listed and that's why, which is what you were arguing. It is because if you look at the Transportation Service Agreement, La Paloma is not listed as a party to whom we are delivering gas. It's the same argument. But I'm pointing to how the contract language supports the District Court's conclusion. Now, there are two very different points. Okay. One is that you didn't contract to deliver gas to them. I understand that. But the argument that they are not identified in the contract when the exhibit has a shipping point that you know is La Paloma because you built the interconnect, strikes me as a very difficult argument to make. That's so. Or impossible. So, I mean, I'm not sure it's dispositive, but your argument is one that I have difficulty accepting. The argument you made is the one I have difficulty accepting, your first one. But anyway, you're being edged out, so why don't we hear from your co-counselor. Your Honor, Mitchell McFarland for El Paso Natural Gas Company and Mojave Pipeline Company. I have an answer to the questions that draws the two arguments together. As Mr. Messer said, they nominate the gas. They contract to deliver the gas to the Shipper. The Shipper says bring it to the delivery point. They give it to the pipeline. The pipeline then takes it to the receipt, I mean, the delivery point. They take it from the receipt point to the delivery point and re-deliver it to EDF Trading. That's right. And I understand. Okay. I understand that argument. And then the downstream customers become incidental beneficiaries of the transportation agreement. That may well be true. But they are not the intended beneficiaries. That may well be true. But it's not because they're not known or not named in the contract. It may be because of the argument you made. But that's not what the district court said. Actually, they're not named in the contract. The place, La Paloma, is a location. The company, La Paloma Generating Company, is the company downstream from that location. You can't possibly contend that your client didn't know to whom this gas was going to be eventually delivered. Actually, we don't know. What we know is that EDF nominates it at the receipt point and they nominate it at La Paloma. What happens to it after that is up to EDF. When they nominate it to La – look, I understand your structural argument. But when they nominate it to – what I'm having difficulty with is this sort of notion that we have no idea to whom this gas is being delivered. We're not saying – we're not saying – You know precisely to whom this gas is being delivered, do you not? Yes. We know the location it's being delivered. We know there's a power plant there. And you know that power plant is operated by La Paloma? Generally, yes. Actually, we do. Because in the nominations, if we have to balance with somebody, we have to balance with La Paloma. Because you have another agreement with La Paloma that says you'll be able to do a balancing with us. But the point of the argument here was third-party beneficiary. You cannot enforce the contract unless you are an intended beneficiary. I understand that argument. But that's – the reason that we're having so much trouble is that your co-counsel got up and made a different argument, which is that you can't be a third-party beneficiary unless you're named in the – unless you're named in the contract. And we're both – I can't speak for Judge Kaczynski. He can speak. Oh, but you do all the time. Yeah, but we're having trouble with that argument. And there is a slight difference between Utah and Colorado law and Texas law, which I'm familiar with. In Colorado, you don't have to be named to be a third-party beneficiary. The facts and circumstances can show that. So then why don't we move on to summary judgment here rather than do this? Because they have – because of the way this was pled, they pled them – they did not – they are not a third-party beneficiary as a matter of law because the contract – the only intended beneficiary is EDF. They are a – they are an incidental beneficiary because they do get the gas. And in the last few minutes, I would like to discuss the – the negligence claim. And the – So just – I wanted somebody to address that. Is that barred by the tariff? Absolutely. That's the answer. The answer is the filed-rate doctrine. The Medco case is right on point. The Pacific Resources – Pacific Corps case from Oregon is right on point. What if you delivered gas and La Paloma's plant exploded because it was bad gas and people were injured? Would the filed-tariff doctrine bar that claim? Yes. No, excuse me. If there is a – if the pipeline violates a standard of care such as having a cracked pipe or something like that that is a public issue, that is a different – that's a different claim. That's not the claim they're making here. No, I understand. I'm trying – what I'm wondering about is what are the limits of the filed-rate doctrine? Do they cover personal injury that occurs? No, they do not. Filed-rate deals with the contractual liability of the pipelines. They cannot be beyond the rate filed with the commission. And the filed-rate – and what they're doing here is, with the negligence claim, expanding the rate, which is what all – Medco court found, California versus Locklear, this court found, and in the Pacific Corp case found. If I may, because we have an expert on the filed-rate doctrine up here, could EDF sue you for what La Paloma is now suing you for? EDF could sue us if we didn't deliver the gas pursuant to the transportation service agreement. They certainly could. Well, the transportation service agreement also says you'll deliver gas of – you will deliver gas of a certain quality. That is correct. And let's assume that you didn't for purposes of – In fact, you have identified the elephant that's not in the room. They should have sued EDF. No, he – And then EDF would have sued us. The elephant's in the room because he acknowledged that. My question is a different one. Could EDF today sue you and say, under the transportation service agreement, you said you would deliver gas of a certain quality to La Paloma and you did – to me, at the La Paloma Interconnect, and you did not? And the question would be, what is EDF's damages? That's my next question. What are its damages under the TARF? Zero, because it has a consequential damage clause. It owes nothing to La Paloma. That is the Wolf Hollow case. That is why La Paloma is not suing EDF. I'm also an expert on the Wolf Hollow case, having dealt with him in that case. No, no. Put aside the next set of relationships. EDF sues you and says you delivered bad gas, and the TSA says you shouldn't. Right. And we all agree that it says that. And what's their damage? Well, that's my question. Can they recover the price of the gas? No. This is a transportation – they could cover the cost of the transportation. They could cover the commodity charge for that gas. Is that because the TARF limits them to that? No. It's because that's what they paid us. They agreed to pay us a demand charge and a commodity charge to deliver gas to them. If we breach our contract, then they would have a claim against us, and their damage might be, well, we're not going to pay the commodity charge for these decatherms because they were bad. And that may be their claim. What if the gas is bad and corrodes the – or damages the pipeline? Then we're hurting ourselves. That's our pipe. It's your pipe? Yes. Okay. Jointly owned between Tern River and Mojave. But I'm interested in your last answer. So let's assume that these guys had sued – La Paloma had sued EDF. Right. And said, you gave us – bad gas just sounds like the wrong term. You gave us substandard gas, and therefore we had to shut down our plant. And you – therefore we're suing you. And they get a judgment against EDF. Right. Can EDF come against you to – They would sue us under the Transportation Service Agreement. But you're saying if they sue you under the agreement, all you owe them is the price of transportation. My point is that – Is that right? No. EDF would try to – they might try to claim the damages over. But in that situation, they'll suit, which is why they're not doing it. The suit by La Paloma against EDF, they can't recover those damages. They can't recover the damage to the plant. They can't recover – That's because of their agreement with EDF. Exactly. I understand that. Which is why, in a negligence context, they should take care of that themselves. In other words, EDF can have a better contract. They can put in a filter separator. Or they could contract with us directly if that's what they wanted. And so they can't use negligence to get beyond the file rate. Thank you. And our time's up. Thank you. Okay. Your Honors, I have three points I want to hit briefly. Nominations, EDF, and filed rate. And I love the filed rate issue, but I'm going to leave it for last. On the nominations, the fact is that the nomination spreadsheet for El Paso specifically mentions not just the delivery point, but the delivery name, La Paloma Generating LLC. I agree that the TSA proper does not mention La Paloma, but it is, in effect, an option to ship. The contract to ship, the second contract that makes the deal, is the nomination. The court below recognized if the nomination was part of a contract, the nomination had us as the intended beneficiary. The question is, can you rule on a 12b-6 as a matter of law that the nomination wasn't a contract? I think the answer to that, given the facts and circumstances, is absolutely not. Are you saying that's a question of fact and not a question of law? I am saying that once you recognize that there are contract terms in the nomination documents. But you're saying the nominations are each separate contracts as a matter of law? Absolutely. Absolutely. Now, they have a — as you go along, they carry a certain weight of recognition that they all involve the same parties. But each time you make a deal, that's a deal. Let's assume — I agree with you. Let's assume that you have — they had — EDF had a contract which required them to deliver gas to EDF at your interconnect. Right. Answer the question that we eventually resolved, came to here, which is, why does that make you an intended beneficiary as opposed to an — Incidental. Incidental beneficiary. Because the reality in the pipeline situation is that saying you're delivering to the shipper at the delivery point is a complete fiction. EDF ain't there. It's our interconnect that they're delivering to. And they know it's ours because they built it for us, not for EDF. The gas gets taken out by us. They're fungible molecules. They're not in the possession of EDF. I think no one disputes that. My question was a different one. Why does that, given the structure of these contracts, make you an intended — somebody to whom the pipeline said, I'm now undertaking a contractual obligation? Because that's what an intended beneficiary is. Because the whole point of the contract is to get gas to me. Each nomination has only one purpose. The purpose isn't putting gas in the pipeline. The purpose is taking gas out of the pipeline at our interconnect. That might be true, but why can't they write the contract any way they want? They say, look, we don't want to have a contract that obligates us to deliver gas to all these people. The contract obligates us to deliver gas to you. How you have it taken out of the pipeline, whether you have your purchasers take it out of the pipeline or you do it yourself, you hire somebody to be there and open the spigot, it's not our concern. We're delivering it to you. You take care of how it's distributed. Why can't they limit themselves to that contract? And why haven't they done that here on page 177? Well, and I think the answer is you could conceive of such a contract. Whether the tariff would be approved or not is a different question. But see, I see it right here. This contract, the option, says deliver it to the shipper. But the second contract, the actual transaction, says, particularly in the case. But it doesn't. It says deliver it to the interconnect. And the nominations identify the interconnect as La Palomas. But they don't say you have now absolved your obligation to deliver it to us at the interconnect. You may deliver it to them. Well, actually, Your Honor, that's why I enlarge these things, because the El Paso nominations specifically say at the top, delivery name. Sorry, the word is down, D-N. Down name, not location. That's also in there, but name. And it says La Paloma Generating Company, LLC. So your position is that the nominations modify the clause that Judge Kaczynski has been reading to you? My position is that the first contract creates an option, and the second actual interchange in the electronic marketplace creates a contract. And in that contract, everybody intends that La Paloma will get market-quality gas that it will use. That's the whole point of the transaction. But if the TSAs and the nomination are construed as one contract, doesn't your argument fail because the intended user here is not La Paloma, but EDF? No, Your Honor, the intended user is always La Paloma. There's nobody else at the interconnect. There's no way to take that gas and give it to someone else. So you're saying La Paloma isn't serving EDF by transporting the gas pursuant to the TSA, but rather serving La Paloma by delivering it to the interconnect? EDF is serving La Paloma at every step by getting La Paloma the fuel it needs to run the generators. That's the entire point of the transaction, and that's the entire agency point as well as third-party beneficiary point. A third-party beneficiary has to be an intended beneficiary. You agree? Yes. Why can't EDF and the pipeline structure their contractual relationship in a way that says you're not a third-party beneficiary? Perhaps they could have, but they didn't. Why doesn't that paragraph that we've been reading do that? Because the shipper paragraph doesn't end the inquiry. It only begins it. The nominations end the transaction because that's when these people who have a right to ship say, here's where I want my gas to wind up, here's my customer. And once again. And where's the contractual provision that does that? It is an electronic marketplace. The parties place these offers and acceptances of what are you going to do. The spreadsheets merely reflect the terms. See, that's why I'm having difficulty with the third-party benefit. So what happens is it's an electronic marketplace. You choose to do business not with the pipeline but with EDF because EDF has the ability to structure these transactions. With all respect, we ask EDF to do business for us, but, yes, EDF is doing the business. So why doesn't the pipeline then have the ability to say, hey, that's cool, we'll deal with EDF because they know how to do these electronic transactions and they're a big customer. We won't want to deal with the end customers. We just want to deal with EDF. You know, Your Honor, again, perhaps you could have a tariff which had a provision like that that said this contract cannot create rights in anyone else. But you don't have that. There are contracts like that. You're suing under the contract, not under the tariff, right? But the tariff, the contract, the TSA, the form of TSA is actually part of the tariff. The way the tariff works, they require you to append the TSA. The TSA says we're delivering it to the shipper. In real life, as pleaded in the complaint, no such thing happens. The shipper isn't there. They know. They are giving the gas directly to us. That's real life when they make the deal. But the TSA doesn't require the delivery of any specific amount of gas to any particular client. Absolutely right. That's why I say it's just a framework. That's why I say that the nominations are the things which are the second contracts which implement, use the framework, any one of several dozen frameworks. So is the bottom line the only way you win that argument on the third-party beneficiary is if we find that the nominations are single contracts? Not if they're single contracts, but that they're contracts. They could be like with an option and then a later exercise of the option in a purchase. They could be a two-step deal. There's nothing wrong with a good two-step. All right? Your Honor, I realize I'm way over, but the point about EDF and its damage waiver, that's just a collateral point to be made, that since EDF has absolutely no control over the quality of the gas that the pipeline delivers, it makes perfect sense for them to have a restriction on their liability. What if the pipeline refused to deliver to La Paloma? What if they just said, tomorrow, we're not going to deliver that gas? Who would La Paloma sue? Well, if it stopped taking nominations, La Paloma would have to... No, if it had the nomination, but it just said, we're not going to do it. It said EDF has made these nominations for delivery at La Paloma, and as I said, we're turning it off. If they said they were turning it off, I believe we could sue them because we are the third... They built that interconnect for us, and we are the third-party beneficiary of the nominations that were made. If they said, we're going to stop taking nominations for La Paloma, I think that would be a FERC issue as to whether they could do that when we're on the pipeline. But as long as there are outstanding nominations, I don't think they can turn off the spigot. And I don't think it would be right for us to blame EDF about the quality of the gas, and I don't think it would be right in the system for the people who contaminated the gas to have no liability to anyone when the contamination damaged us. So, 30 seconds, the filed rate, a wonderful topic. Both MEDCO and this court's opinion in Dinergy specifically recognize that the filed rate is there so that contract parties cannot claim rights that the filed rate doesn't give them, and that the filed rate, in turn, doesn't create rights for anybody else. That's why our claim is in the alternative. Tell me I got a contract, and I will go away happy. But tell me I don't have a contract, then the filed rate doctrine does not apply to me versus the duty of care. They introduced a contaminated element into a product they were delivering to me, whether it's a barroom glass or it's an explosion. The filed rate doesn't stop me, if I don't have a contract, from suing for that breach of duty of care so long as the duty of care is not just a contract. We're alleging that the contamination was their fault due to their negligence. And again, if there is no contract, then the filed rate doesn't stop us as a third party, any more than it would stop an adjacent landowner from asserting a claim. Thank you very much, and I appreciate your tolerance on the overtime. The HSI will stand for a minute.
judges: Kozinski, Hurwitz, Keeley